UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANT DALE HURLBERT,<br><br>    Plaintiff,<br><br>    v.<br><br>WILLIAM L. MUNIZ, et al.,<br><br>    Defendants. | Case No. 15-cv-04357-JSC<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO COMPEL; DENYING MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 21, 43, 39 |

## INTRODUCTION

Plaintiff, a California prisoner at Corcoran State Prison, filed a pro se civil rights action under 42 U.S.C. § 1983 against officials at the Salinas Valley State Prison ("SVSP"), where Plaintiff was formerly housed.[1] The Court reviewed the First Amended Complaint (ECF No. 7) --- the operative complaint --- under 28 U.S.C. § 1915(e) and found it to state two cognizable claims: violation of the Eighth Amendment and violation of Plaintiff's right to due process. The United States Marshal completed service of process upon Defendants Warden William L. Muniz, Sergeant Jackson, Correctional Officer Ceballos, and Correctional Officer Chin. They have moved for summary judgment, Plaintiff filed an opposition, and Defendants filed a reply brief. Thereafter, Defendants filed a notice withdrawing the motion for summary judgment as to the due process claim only. (ECF No. 40.) Plaintiff has also filed a motion to compel discovery (ECF No. 39) and supplemental oppositions to the motion for summary judgment (ECF Nos. 41, 44, 45). Defendants have filed a motion to strike the supplemental oppositions. (ECF No. 43.) For the reasons discussed below, the motion for summary judgment is GRANTED IN PART, Plaintiff's motion to compel is DENIED, and Defendants' motion to strike is DENIED.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 1, 14.)

**BACKGROUND**

While Plaintiff was on the SVSP "A-yard," an inmate named "Menace" threatened to hurt Plaintiff if Plaintiff did not pay him money. (ECF No. 7 at 3-4.) Plaintiff informed SVSP officials of the threat, and they moved him to administrative segregation.[2] (*Id.*) While Plaintiff was in administrative segregation, an inmate who identified himself as "Playboy" told Plaintiff that he would be collecting the debt that Plaintiff owed to "Menace." (*Id.* at 4.) Plaintiff alleges that he never owed the debt, and he learned that Playboy's name was "Mario E." (*Id.*) On May 6, 2015, Plaintiff was interviewed by prison officials and he expressed his safety concerns about "Menace," whom he described but whose name or cell number he could not provide. (*Id.*; ECF No. 24-4.) At some point in time, Defendant Warden Muniz endorsed Plaintiff for a transfer to administrative segregation at Corcoran. (ECF No. 7 at 4.)

On May 11, 2015, Defendant Ceballos came to Plaintiff's cell and told him that he would be moved to "D-yard" because space was needed in administrative segregation. (*Id.* at 5; ECF No. 24-5.) Plaintiff told Ceballos that he would not move to D-yard because "Mario E. a.k.a. Playboy" was housed there and posed a threat to him. (ECF No. 7 at 5.) Ceballos issued him a Rules Violation Report ("RVR")[3] for refusing to accept a housing assignment, and told Plaintiff that he could raise his safety concerns with housing committee officials. (*Id.*) At the RVR hearing on June 12, 2015, Plaintiff informed prison officials that there was an inmate named "Mario E." or "Playboy" who posed a threat to him if he had obeyed Ceballos's order to move to D-yard, but because Plaintiff did not provide the inmate's last name or prisoner number, he was found guilty of not following Ceballos's order and assessed a loss of 61 days of good-time credits. (*Id.*; ECF Nos. 24-6, 24-7.)

On or about July 20, 2015, while Plaintiff was still in the administrative segregation unit, Defendant Chin informed him that he would get a cellmate, who moved in that day. (ECF No. 7 at 6.) After "several days," Plaintiff learned that this cellmate was "Playboy," and

---

[2] Plaintiff alleges that this occurred in April *2014*, but this appears to be a typo because the records indicate that he was placed in administrative segregation in April *2015*. (ECF 24-3.)
[3] The RVR is also referred to as a "115" because it appears on a prison form "CDC 115."

1  "approximately" one week after that, "Playboy" attacked Plaintiff with a sharpened toothbrush.[4]
2  (*Id.* at 6-7.) Plaintiff alerted prison officials, and in ten minutes "Playboy" was removed; Plaintiff
3  suffered defensive wounds on his hands. (*Id.* at 7.)

4        The Court previously concluded that the above allegations, when liberally construed, state
5  two cognizable claims for relief. The first cognizable claim is that Defendants were deliberately
6  indifferent to Plaintiff's safety --- in violation of his Eighth Amendment rights --- when they
7  placed Mario E. in Plaintiff's cell despite his protestations that Mario E. had threatened to hurt
8  him. The second cognizable claim is that when Defendants disciplined Plaintiff for refusing to
9  follow Ceballos's order to move to the D-yard, they did not provide him with all of the procedures
10 required by due process, such as an adequate investigation. Defendants move for summary
11 judgment on the grounds that Plaintiff has not exhausted his administrative remedies as to the
12 Eighth Amendment claim, and that the due process claim is barred under *Heck v. Humphrey*, 512
13 U.S. 477, 486-487 (1994).[5] In their request to withdraw the motion for summary judgment on the
14 due process claim, Defendants indicate that Plaintiff's good time credits have been restored due to
15 his good behavior since the disciplinary proceedings, which moots their *Heck* argument.
16 Therefore, the only remaining issue for the Court to decide is whether Plaintiff's Eighth
17 Amendment claim has been properly exhausted. The Court now recounts the relevant background
18 as to the administrative remedies that Plaintiff pursued.

19       The facts are undisputed regarding the administrative remedies that are available to
20 California prisoners. The California Department of Corrections and Rehabilitation ("CDCR")
21 provides its inmates and parolees the right to appeal administratively "any policy, decision, action,
22 condition, or omission by the department or its staff that the inmate or parolee can demonstrate as
23 having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs.

---

[4] Plaintiff does not specify the date he was assaulted with the sharpened toothbrush. It appears from his statements in a supplemental opposition that it occurred after he filed his administrative appeal, on August 2, 2015. (*See* ECF No. 44 at 3-4.)

[5] *Heck* bars a claim of unconstitutional deprivation of time credits because such a claim necessarily calls into question the lawfulness of the plaintiff's continuing confinement, i.e., it implicates the duration of the plaintiff's sentence. *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996).

§ 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *Id.* A prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through several levels of appeal: (1) first level appeal filed with one of the institution's appeal coordinators, (2) second level appeal filed with the institution head or designee, and (3) third level appeal filed with the CDCR director or designee. *Id.* § 3084.7.

There is also no dispute about the administrative appeals Plaintiff filed regarding the allegations in his First Amended Complaint. He submitted an appeal at the first level of review on August 2, 2015.[6] (ECF No. 41 at 8.) The appeal claimed that the RVR he received for failing to obey Ceballos's order violated his right to due process because prison officials did not investigate his assertion that if he complied with their order to move to D-yard, he would be exposed to harm from "Playboy," whose full name he had learned was Mario P. Espinoza. (*Id.* at 8, 10.) Plaintiff requested: (1) that he be found not guilty of violating prison rules, and (2) a formal inquiry into whether the Senior Hearing Officer on the RVR lied in stating that the investigating employee had gathered information and interviewed witnesses. (*Id.*)

Prison officials bypassed the first level of review, and on September 14, 2015, the appeal was denied in part and granted in part by Chief Deputy Warden Hatton at the second level of review. (ECF No. 25-1 at 1-4.) Hatton denied the request to find Plaintiff not guilty because the merits of the RVR could not be heard on appeal, only the issue of whether he had received the procedural protections required by due process, which Hatton found that he had. (*Id.* at 2.) Nevertheless, "in the interests of justice," Hatton reviewed the records of the interview of Plaintiff by prison officials on May 6, 2015, at which Plaintiff had expressed safety concerns. (*Id.*) Hatton concluded that Plaintiff had not sufficiently identified enemy inmates in that interview, and consequently, prison officials had conducted themselves properly. (*Id.*)

On October 10, 2016, Plaintiff appealed to the third level of review. (ECF No. 7 at 4, 6.)

---

[6] That appeal and the decisions denying it at the different levels of review have been submitted by both parties. (ECF No. 41 (Pl. Supp. Opp.) at 8-11; ECF No. 25-1 (Medina Decl. Exh. A); ECF No. 23-2 (Voong Decl. Exh. B).)

4

1    At the third level of review, Plaintiff complained that A. Cortina, the prison employee assigned to
2    investigate the charges on Plaintiff's behalf, lied in stating that Plaintiff had no questions for
3    Ceballos.  (*Id.*)  Plaintiff stated that he had in fact asked Ceballos why he was being punished for
4    trying to contribute to the safety of the prison by avoiding Espinoza on the D-yard.  (*Id.*)  Plaintiff
5    claimed that his right to due process was violated insofar as he was not given a proper opportunity
6    to question Ceballos nor was there an adequate investigation.  (*Id.*)  On December 11, 2015, the
7    Appeals Examiner J. Benavidez denied the appeal at the third level because Plaintiff was given all
8    of the protections required by due process.  (ECF No. 23-2 at 1.)

## DISCUSSION

**A.    Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

The motion for summary judgment is unopposed.  A district court may not grant a motion

5

1 for summary judgment solely because the opposing party has failed to file an opposition.
2 *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be
3 granted only after court determines that there are no material issues of fact).  The Court may,
4 however, grant an unopposed motion for summary judgment if the movant's papers are themselves
5 sufficient to support the motion and do not on their face reveal a genuine issue of material fact.
6 *See Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001).
7 Plaintiff's verified complaint may be used as an opposing affidavit under Rule 56 to the extent it is
8 based on personal knowledge and sets forth specific facts admissible in evidence.  *Schroeder v.*
9 *McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th
10 Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified
11 amended complaint as an opposing affidavit).

12      Exhaustion must ordinarily be decided in a summary judgment motion.  *Albino v. Baca*,
13 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).   If undisputed evidence viewed in the light most
14 favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment
15 under Rule 56.  *Id.* at 1166.

16 **B.**     <u>**ANALYSIS**</u>

17      Defendants argue that they are entitled to summary judgment because Plaintiff has not
18 properly exhausted his administrative remedies on his Eighth Amendment claim.  Defendants
19 argue that the appeal only raises his due process challenge to the RVR and not the Eighth
20 Amendment claim that Defendants failed to protect him from Espinoza when they assigned
21 Espinoza to his cell.  The undisputed evidence shows that Plaintiff filed one administrative appeal
22 regarding the allegations in his complaint, copies of which have been submitted by the parties as
23 described above.

24      The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought
25 with respect to prison conditions under [42 U.S.C.  1983], or any other Federal law, by a prisoner
26 confined in any jail, prison, or other correctional facility until such administrative remedies as are
27 available are exhausted." 42 U.S.C. 1997e(a).  Compliance with the exhaustion requirement is
28 mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739-40

6

& n.5 (2001). The PLRA exhaustion requirement requires "proper exhaustion," which means compliance with prison grievance procedures. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). The California regulations require the prisoner "'to describe the problem and action requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting 15 Cal. Code Regs § 3084.2(a)). The grievance suffices if "alerts the prison to the nature of the wrong for which redress is sought." *Id.* A grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. *Id.* The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. *Id.* The grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." *Id.* (citation and internal quotation omitted).

Plaintiff's Eighth Amendment claim is that Defendants placed Espinoza in his cell despite the fact Plaintiff had tried to inform prison officials that Espinoza was a threat to him, and Espinoza eventually attacked him with a sharpened toothbrush. The administrative appeal did state that Espinoza was a threat to him, but did not allege the essential facts underlying this claim that Espinoza was placed in Plaintiff's cell and had attacked him; indeed, it appears that Plaintiff had not even been attacked yet when he first filed the appeal. (ECF No. 44 at 3-4.) Further, Plaintiff did not request in the appeal that he be separated from Espinoza. Rather, the appeal challenged the validity of the RVR for disobeying Ceballos's orders, and sought to overturn the RVR the grounds that prison officials had not adequately investigated the charges and lied about their investigation. In so doing, the appeal set forth Plaintiff's due process claim, which is undisputedly exhausted, but it did not set forth Plaintiff's Eighth Amendment claim that he was assaulted by Espinoza because Defendants failed to protect him.

The Court recognizes that there is some overlap between the claim asserted in the administrative appeal and Plaintiff's Eighth Amendment claim in that the appeal asserts that prison officials should have investigated Plaintiff's asserted defense to the RVR, namely that "Playboy" (Espinoza) would harm him if he followed Ceballos's order to move to D-yard. The

1   prison officials would only know from the administrative grievance that Plaintiff wanted to undo
2   the RVR, not that Espinoza was in his cell and had assaulted him.  Prison officials would not be
3   able to take the appropriate corrective action, such as moving Espinoza out of Plaintiff's cell,
4   disciplining Espinoza, separating Plaintiff and Espinoza permanently, or insuring that Plaintiff
5   receive adequate medical care for injuries he sustained.  The overlap between the appeal and the
6   Eighth Amendment claim is therefore not sufficient to reasonably alert prison officials to the
7   nature of the problem that underlies that claim or to give them an opportunity to remedy the
8   problem.  As a result, Plaintiff's administrative appeal did not "properly exhaust" Plaintiff's
9   Eighth Amendment claim, as required by the PLRA.

10          Plaintiff states in his complaint that he did not inform prison officials of Espinoza's attack
11  in an administrative appeal because he did not want to be disciplined further.  To excuse
12  exhaustion on the basis of a threat of retaliation, an inmate must show that he actually believed
13  prison officials would retaliate against him if he filed an administrative grievance, that such a
14  belief was objectionably reasonable.  *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).
15  Plaintiff alleges no threat by prison officials that he would be disciplined for filing an
16  administrative grievance or reporting the attack from Espinoza.  He alleges no prior discipline for
17  such things.  The RVR was for not following Ceballos's order, not for filing an administrative
18  grievance or reporting an attack by another inmate.  As a result, there is no evidence of a
19  reasonable belief that Plaintiff would be retaliated against had he filed an administrative appeal
20  about his Eighth Amendment claim, and exhaustion cannot be excused on that basis.  *Cf. id.* at
21  984-88 (fining insufficient threat of retaliation to excuse exhaustion because supposed threat by
22  prison officials that inmate's injuries "could have been much worse" did not refer to
23  administrative appeals).

24          Plaintiff also argues that it would have been futile to include his Eighth Amendment claim
25  in an administrative appeal because he was already being transferred to another prison, and no
26  money damages are available through the administrative appeal process.  Even when the prisoner
27  seeks relief not available in grievance proceedings, notably money damages, exhaustion is a
28  prerequisite to suit.  *Booth*, 532 U.S. at 739-40 & n.5; *Morton*, 599 F.3d at 945.  A prisoner

8

"seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." *Booth*, 532 U.S. at 739. Here, prison officials could provide some form of relief even though Plaintiff has already been transferred to another prison, such as permanently ordering their separation throughout their sentence should they end up at the same prison, a similar guarantee with respect to Espinoza's known associates, additional medical care or other accommodations for Plaintiff's injuries, and discipline or further training for any prison staff who failed to protect Plaintiff. Under these circumstances, excusing the exhaustion requirement on the grounds of futility is not warranted.

Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim because the undisputed evidence shows that Plaintiff did not properly exhaust the claim as required by the PLRA. Defendants, having withdrawn their summary judgment motion as to Plaintiff's due process claim, will have the opportunity to file a new summary judgment motion on that claim based on grounds not raised in the present motion.

## CONCLUSION

1. For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 35) is GRANTED IN PART AND DENIED IN PART. Plaintiff's Eighth Amendment claim is DISMISSED without prejudice to refiling after all administrative remedies have been properly exhausted.

2. To expedite the resolution of this case:

a. No later than **91** days from the date this order is issued, Defendants shall file a motion for summary judgment or other dispositive motion on Plaintiff's due process claim. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56, and shall include as exhibits all records and incident reports stemming from the events at issue. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

b. At the time the dispositive motion is served, Defendants shall also serve, on a separate paper, the appropriate notice required by *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th

Cir. 1998) (en banc). *See Woods v. Carey*, 684 F.3d 934, 940-941 (9th Cir. 2012).

      c. Plaintiff's opposition to the dispositive motion, if any, shall be filed with the Court and served upon Defendants no later than **28** days from the date the motion is filed. Plaintiff must read the attached page headed "NOTICE -- WARNING," which is provided to him pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc).

      d. Defendants shall file a reply brief no later than **14** days after the opposition is filed.

      e. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

3. In light of Plaintiff's pro se and incarcerated status, the Court has reviewed the supplemental oppositions. Defendants' motion to strike them is DENIED.

4. In his motion to compel discovery, Plaintiff seeks to have Defendants' attorney interview an inmate who witnessed the attack on Plaintiff by Espinoza. (ECF No. 39 at 3-4.) As that issue pertains to the dismissed Eighth Amendment claim, the motion to compel is DENIED as unnecessary.

**IT IS SO ORDERED.**

Dated: 02/07/2017

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

**NOTICE -- WARNING (SUMMARY JUDGMENT)**

If Defendants move for summary judgment, they are seeking to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact-- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in Defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.