UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANT DALE HURLBERT,<br><br>  Plaintiff,<br><br>v.<br><br>WILLIAM L. MUNIZ, et al.,<br><br>  Defendants. | Case No. 15-cv-04357-JSC<br><br>**ORDER GRANTING SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 52, 62 |

## INTRODUCTION

Plaintiff, a California prisoner at Corcoran State Prison, filed a pro se civil rights action under 42 U.S.C. §1983 against officials at the Salinas Valley State Prison ("SVSP"), where Plaintiff was formerly housed.[1] The Court reviewed the First Amended Complaint (ECF No. 7) --- the operative complaint --- under 28 U.S.C. §1915(e) and found it to state two cognizable claims: violation of the Eighth Amendment and violation of Plaintiff's right to due process. (ECF No. 8.) Defendants filed a motion for summary judgment on both claims, but withdrew the motion as to the due process claim.[2] The motion was granted on the Eighth Amendment claim. (ECF No. 46.) Now before the Court is Defendants' new motion for summary judgment on the due process claim. Plaintiff filed an opposition, and Defendants filed a reply brief. For the reasons discussed below, the motion for summary judgment (ECF No. 52) is GRANTED. Plaintiff has also filed a "motion to force officials to comply," (ECF No. 62) which is DENIED.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 1, 14.)
[2] Defendants had argued that the due process claim was barred by *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994), and then withdrew that argument as moot.

**BACKGROUND**

The following factual and procedural background was set forth in the order granting Defendants' first summary judgment motion on the Eighth Amendment claim (ECF No. 46):

> While Plaintiff was on the SVSP "A-yard," an inmate named "Menace" threatened to hurt Plaintiff if Plaintiff did not pay him money. (ECF No. 7 at 3-4.) Plaintiff informed SVSP officials of the threat, and they moved him to administrative segregation.[3] (*Id.*) While Plaintiff was in administrative segregation, an inmate who identified himself as "Playboy" told Plaintiff that he would be collecting the debt that Plaintiff owed to "Menace." (*Id.* at 4.) Plaintiff alleges that he never owed the debt, and he learned that Playboy's name was "Mario E." (*Id.*) On May 6, 2015, Plaintiff was interviewed by prison officials and he expressed his safety concerns about "Menace," whom he described but whose name or cell number he could not provide. (*Id.*; ECF No. 24-4.) At some point in time, Defendant Warden Muniz endorsed Plaintiff for a transfer to administrative segregation at Corcoran. (ECF No. 7 at 4.)
>
> On May 11, 2015, Defendant Ceballos came to Plaintiff's cell and told him that he would be moved to "D-yard" because space was needed in administrative segregation. (*Id.* at 5; ECF No. 24-5.) Plaintiff told Ceballos that he would not move to D-yard because "Mario E. a.k.a. Playboy" was housed there and posed a threat to him. (ECF No. 7 at 5.) Ceballos issued him a Rules Violation Report ("RVR")[4] for refusing to accept a housing assignment, and told Plaintiff that he could raise his safety concerns with housing committee officials. (*Id.*) At the RVR hearing on June 12, 2015, Plaintiff informed prison officials that there was an inmate named "Mario E." or "Playboy" who posed a threat to him if he had obeyed Ceballos's order to move to D-yard, but because Plaintiff did not provide the inmate's last name or prisoner number, he was found guilty of not following Ceballos's order and assessed a loss of 61 days of good-time credits. (*Id.*; ECF Nos. 24-6, 24-7.)
>
> On or about July 20, 2015, while Plaintiff was still in the administrative segregation unit, Defendant Chin informed him that he would get a cellmate, who moved in that day. (ECF No. 7 at 6.) After "several days," Plaintiff learned that this cellmate was "Playboy," and "approximately" one week after that, "Playboy" attacked Plaintiff with a sharpened toothbrush.[5] (*Id.* at 6-7.) Plaintiff alerted prison officials, and in ten minutes "Playboy" was removed; Plaintiff suffered defensive wounds on his hands. (*Id.* at 7.)
>
> The Court previously concluded that the above allegations,

---

[3] Plaintiff alleges that this occurred in April *2014*, but this appears to be a typo because the records indicate that he was placed in administrative segregation in April *2015*. (ECF 24-3.)
[4] The RVR is also referred to as a "115" because it appears on a prison form "CDC 115."
[5] Plaintiff does not specify the date he was assaulted with the sharpened toothbrush. It appears from his statements in a supplemental opposition that it occurred after he filed his August 2, 2015 administrative appeal. (*See* ECF No. 44 at 3-4.)

2

when liberally construed, state two cognizable claims for relief. The first cognizable claim is that Defendants were deliberately indifferent to Plaintiff's safety --- in violation of his Eighth Amendment rights --- when they placed Mario E. in Plaintiff's cell despite his protestations that Mario E. had threatened to hurt him. The second cognizable claim is that when Defendants disciplined Plaintiff for refusing to follow Ceballos's order to move to the D-yard, they did not provide him with all of the procedures required by due process, such as an adequate investigation.

Defendants move for summary judgment on the grounds that Plaintiff has not exhausted his administrative remedies as to the Eighth Amendment claim, and that the due process claim is barred under *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994). In their request to withdraw the motion for summary judgment on the due process claim, Defendants indicate that Plaintiff's good time credits have been restored due to his good behavior since the disciplinary proceedings, which moots their *Heck* argument. Therefore, the only remaining issue for the Court to decide is whether Plaintiff's Eighth Amendment claim has been properly exhausted. The Court now recounts the relevant background as to the administrative remedies that Plaintiff pursued.

The facts are undisputed regarding the administrative remedies that are available to California prisoners. The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs. § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *Id.* A prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through several levels of appeal: (1) first level appeal filed with one of the institution's appeal coordinators, (2) second level appeal filed with the institution head or designee, and (3) third level appeal filed with the CDCR director or designee. *Id.* § 3084.7.

There is also no dispute about the administrative appeals Plaintiff filed regarding the allegations in his First Amended Complaint. He submitted an appeal at the first level of review on August 2, 2015.[6] (ECF No. 41 at 8.) The appeal claimed that the RVR he received for failing to obey Ceballos's order violated his right to due process because prison officials did not investigate his assertion that if he complied with their order to move to D-yard, he would be exposed to harm from "Playboy," whose full name he had learned was Mario P. Espinoza. (*Id.* at 8, 10.) Plaintiff requested: (1) that he be found not guilty of violating prison rules, and (2) a formal inquiry into whether the Senior Hearing Officer on the RVR lied in stating that the investigating employee had gathered

---

[6] That appeal and the decisions denying it at the different levels of review have been submitted by both parties. (ECF No. 41 (Pl. Supp. Opp.) at 8-11; ECF No. 25-1 (Medina Decl. Exh. A); ECF No. 23-2 (Voong Decl. Exh. B).)

> information and interviewed witnesses. (*Id.*)
>
> Prison officials bypassed the first level of review, and on September 14, 2015, the appeal was denied in part and granted in part by Chief Deputy Warden Hatton at the second level of review. (ECF No. 25-1 at 1-4.) Hatton denied the request to find Plaintiff not guilty because the merits of the RVR could not be heard on appeal, only the issue of whether he had received the procedural protections required by due process, which Hatton found that he had. (*Id.* at 2.) Nevertheless, "in the interests of justice," Hatton reviewed the records of the interview of Plaintiff by prison officials on May 6, 2015, at which Plaintiff had expressed safety concerns. (*Id.*) Hatton concluded that Plaintiff had not sufficiently identified enemy inmates in that interview, and consequently, prison officials had conducted themselves properly. (*Id.*)
>
> On October 10, 2016, Plaintiff appealed to the third level of review. (ECF No. 7 at 4, 6.) At the third level of review, Plaintiff complained that A. Cortina, the prison employee assigned to investigate the charges on Plaintiff's behalf, lied in stating that Plaintiff had no questions for Ceballos. (*Id.*) Plaintiff stated that he had in fact asked Ceballos why he was being punished for trying to contribute to the safety of the prison by avoiding Espinoza on the D-yard. (*Id.*) Plaintiff claimed that his right to due process was violated insofar as he was not given a proper opportunity to question Ceballos nor was there an adequate investigation. (*Id.*) On December 11, 2015, the Appeals Examiner J. Benavidez denied the appeal at the third level because Plaintiff was given all of the protections required by due process. (ECF No. 23-2 at 1.)

(ECF No. 46 at 2-5 (footnotes in original).)

On August 3, 2016, the Institutional Classification Committee at Corcoran made a discretionary decision to restore all of the 61 days of good-time credits Plaintiff had forfeited because Plaintiff had since remained discipline-free. (ECF No. 52-7.) In addition to the good-time credits, Plaintiff had lost thirty days of privileges as a consequence of the discipline; this part of his punishment appears to have been served. (ECF No. 52-6 at 3-4.)

Because summary judgment was granted on the Eighth Amendment claim due to Plaintiff's failure to properly exhaust all of his available administrative remedies on that claim, the Court dismissed the claim without prejudice to refiling after it was properly exhausted. (ECF No. 46.) Plaintiff subsequently filed administrative grievances raising the claim, but they were rejected at the second level of review as untimely, *see* 15 Cal. Code Regs. § 3084.6(c)(4) (requiring inmates to file grievances within 30 days of event upon which they are based), and at the third level of review because the lower levels of review had been improperly "bypassed." *See*

*id*. at § 3084.6(b)(15). (ECF No. 49 at 8; ECF No. 56 at 4, 9.) Plaintiff also filed motions for leave to amend and a motion for a writ of mandate, which sought to reinstate his Eighth Amendment claim and argued that he had exhausted it. (ECF Nos. 49, 56.) On October 26, 2017, the Court informed him that if he wanted to bring his Eighth Amendment claim, he had to, within 28 days, "file a motion for leave to file an amended complaint in which he shows that he has properly exhausted the claim, accompanied by a proposed amended complaint." (ECF No. 61.).[7] He did not file a motion to amend, make a showing of proper exhaustion, or submit a proposed amended complaint, as he was ordered to do. Therefore, the only remaining claim is that Defendants violated Plaintiff's right to due process by failing to provide procedural protections during the course of his disciplinary proceedings.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

---

[7] The Court noted that 28 U.S.C. §1997e(a) requires "proper exhaustion," which means "compliance with an agency's deadlines and other critical procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (finding claim not properly exhausted by grievance that was untimely under prison regulations), which Plaintiff's grievances did not appear to have done. (ECF No. 61.)

5

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

**B.  ANALYSIS**

    1.  Summary Judgment Motion

Plaintiff claims that Defendants violated his due process rights when they disciplined him for violating prison rules by failing to finding him guilty, and not conducting an adequate investigation because the main witnesses, Officer Ceballos, was not properly questioned.

Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a criminal defendant do not apply. Nonetheless, where serious violations of prison rules are alleged, and the sanctions to be applied are severe and implicate state statutes or regulations which narrowly restrict the power of prison officials to impose the sanctions, the Due Process Clause requires certain minimum procedural protections. *Wolff v. McDonnell*, 418 U.S. 539, 556-57, 571-72 n.19 (1974). For example, the placement of a California prisoner in isolation or segregation, or the reduction of the prisoner's good-time credits, as a result of disciplinary proceedings, is subject to *Wolff's* procedural protections if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty in question is one of "real substance." *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995).

California's regulations concerning discipline provide explicit standards that narrowly fetter official discretion. Under 15 Cal. Code Regs. § 3320(l), officials must find that a preponderance of the evidence substantiates the charge before guilt may be found and punishment assessed. Absent such a finding, the inmate may not be placed in segregation, nor penalized with a reduction of good-time credits. *See also* 15 Cal. Code Regs. § 3320(a) (requiring notice); *id.* § 3320(b) (requiring hearing). Because a prisoner may not be disciplined unless explicit substantive and procedural requirements are met, the disciplinary standards and procedures meet the "narrowly restrict" prong of the *Sandin* test. *See Walker v. Sumner*, 14 F.3d 1415, 1419 (9th Cir. 1994) (finding Nevada regulations, which are similar to California's, create liberty interest).

The undisputed evidence here, however, shows that the discipline of Plaintiff did not implicate his constitutional right to due process because it was not a deprivation of "real substance" under *Sandin*. A sanction will be of "real substance" if it involves a (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) state action that "will inevitably affect the duration of [a] sentence." *Sandin*, 515 U.S. at 484, 487. In determining whether a restraint is an "atypical and significant hardship," courts should consider whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (placement in segregated housing not a deprivation of real substance).

Plaintiff's discipline did not affect the duration of his sentence because his good time credits were fully restored, and it did not amount to an "atypical and significant" hardship within the meaning of *Sandin*. *Accord Aguilar v. Ohland*, No. C 14-0949 MEJ, 2015 WL 197263 *3 (N.D. Cal. 2015) (finding inmate did not suffer significant deprivation once good time credits restored and therefore no due process violation); *Morris v. Barra*, No. 10-2642 AJB, 2012 WL 1059908, *10 (S.D. Cal. 2012) (same); *Cespedes v. Coughlin*, 956 F. Supp. 454, 475 (S.D.N.Y 1997) (same). After the restoration of his good time credits, the only remaining sanction Plaintiff received for violating prison rules was the loss of privileges for 30 days. A 30-day loss of privileges is not sufficiently significant to implicate an inmate's due process rights. *See Sandin* 515 U.S. at 485-86 (inmate's 30-day loss of privileges associated with his placement in disciplinary segregation did not result in type of atypical, significant deprivation to which the protections of due process apply). The undisputed evidence shows that Defendants did not violate Plaintiff's due process rights when they disciplined him because Plaintiff did not suffer a deprivation of "real substance." This is a sufficient basis to grant Defendants summary judgment on Plaintiff's due process claim.

Even if Plaintiff's right to due process was implicated by the disciplinary proceedings, he received all of the procedural protection to which he was entitled. *Wolff* established five procedural requirements for prison disciplinary proceedings: (1) written notice of the charges; (2) at least 24 hours before a hearing is held; (3) a written statement of the evidence and reasons

7

supporting the disciplinary finding; (4) the inmate's right to call witnesses and present documentary evidence, provided this is not "unduly hazardous" to prison safety and goals; and (5) an assistant if the inmate is otherwise unable to collect and present evidence. *Wolff*, 418 U.S. at 564-570. In addition, the finding must be supported by reliable evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987) (evidence must have indicia of reliability). There is no dispute that Plaintiff received a copy of the RVR describing the charges, and the evidence and reasoning supporting the disciplinary finding; the hearing was held more than 24 hours after he received written notice of the charges; he was at the hearing and allowed to present witnesses or evidence, but he did not do so; and he received an investigative employee to assist him. (ECF No. 52-6 at 4-5.) In addition, there was some reliable evidence to support the finding that Plaintiff had refused his assigned housing in Facility D insofar as Ceballos testified to that effect and Plaintiff did not deny doing so. (*Id.*) Consequently, even if the disciplinary sanctions Plaintiff received were of "real substance" so as to implicate his right to due process, the undisputed evidence establishes that he received all of the procedural protections that right guarantees.

Plaintiff complains that prison officials found him guilty without conducting an effective investigation, including not asking Ceballos about Plaintiff's reasons for not accepting his new housing assignment. There is no constitutional guarantee to not being found guilty or to any particular quality of investigation. Defendants' investigation produced "some evidence" that he had refused his assigned housing, which is all the evidence that is required by the federal constitutional right to due process. He was permitted to present evidence or witnesses that the assigned housing would endanger him, but he did not do so. In his appeal of the discipline, he explained that he refused to move because he was afraid of being attacked, and in his opposition, Plaintiff argues that due process required prison officials not to ignore his safety by assigning him to housing where he could be attacked by other inmates. As explained in the Order of Service (ECF No. 8), the Eighth Amendment, not due process, prohibited prison officials from deliberate indifference to risks of harm to Plaintiff from other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). At most, due process required the procedures and evidence described above,

8

which the undisputed evidence establishes were provided to Plaintiff in his disciplinary proceedings. Accordingly, Defendants are entitled to summary judgment on the due process claim.

### 2. Motion to "Force Officials to Comply"

Plaintiff has filed a motion to "force officials to comply." (ECF No. 62.) He seeks to "backdate" his administrative appeal of his Eighth Amendment claim at the third level of review so that it predates the filing of this action. (*Id.* at 3.) He also wants the Court to order a prison official to "modify" the ruling on that appeal, although it is unclear in what manner he would like the appeal modified. (*Id.*) There is no authority permitting the Court to order a prison official to "backdate" or otherwise modify an administrative appeal. Plaintiff did not properly exhaust the claim because, as he admits (ECF No. 62 at 3), his administrative grievances of the Eighth Amendment were untimely under the applicable regulation. *See Woodford v. Ngo*, 548 U.S. 81, 84, 86 (2006) (finding exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal"). The Court cannot order prison officials to modify or backdate the appeal, nor does he provide any justification for doing so. Accordingly, Plaintiff's motion to "force officials to comply" must be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 52) is GRANTED. Plaintiff's motion to "force Defendants to comply" (ECF No. 62) is DENIED.

**IT IS SO ORDERED.**

Dated: March 20, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge